**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| NISSAN WORLD, LLC, DENVILLE NISSAN INC., PARKWAY FORD, INC., STATELINE FORD, INC. d/b/a FORD & HYUNDAI WORLD, FORD WORLD, LLC d/b/a CONDIT FORD, TOYOTA WORLD, LLC d/b/a CONDIT TOYOTA, and LAKEWOOD TOYOTA d/b/a TOYOTA WORLD OF LAKEWOOD, | : | Civil Action No. 05-02839 (JAG) |
| Plaintiffs, | : | **OPINION** |
| v. | : |  |
| MARKET SCAN INFORMATION SYSTEMS, INC. and WELLS FARGO FINANCIAL LEASING, INC., | : |  |
| Defendants. | : |  |

**GREENAWAY, JR., U.S.D.J.**

Defendant Market Scan Information Systems, Inc. ("Defendant"), a California-based corporation in the business of providing computer hardware and software systems, has filed the instant motion to stay this litigation pending arbitration, pursuant to the arbitration agreement in its contracts with Plaintiffs Nissan World, LLC; Denville Nissan, Inc.; Parkway Ford, Inc.; Stateline Ford, Inc. d/b/a Ford & Hyundai World; Ford World, LLC d/b/a Condit Ford; Toyota World LLC d/b/a Condit Toyota; and Lakewood Toyota d/b/a Toyota World of Lakewood ("Plaintiffs"), a group of affiliated New Jersey automobile dealerships. Defendant claims that the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (1947) ("FAA"), requires that litigation be stayed pending arbitration when the issue in question is subject to arbitration. Moreover, Defendant

claims that Plaintiffs agreed to arbitrate any disputes with Defendant pursuant to paragraph 10 of the agreements between them. (Def.'s Br. 2.) For the reasons stated below, the motion will be granted.

## PROCEDURAL HISTORY

On June 2, 2005, Plaintiffs filed a complaint in the United States District Court for the District of New Jersey against Defendant and co-defendant, Wells Fargo Financial Leasing, Inc. ("Wells Fargo"). The complaint alleged breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and common law fraud, and sought specific performance, declaratory judgment, and preliminary injunctive relief against Defendant, while seeking declaratory judgment and preliminary injunctive relief against Wells Fargo.

On August 12, 2005, Wells Fargo filed a counterclaim against Plaintiffs to recover payments, and a cross-claim against Defendant for breach of contract and fraud. On August 29, 2005, Defendant filed the instant motion. This motion is contested by Plaintiffs and Wells Fargo.

## STATEMENT OF FACTS

Plaintiffs individually entered into identical Customer Purchase Orders and Non-Exclusive License Agreements (the "Agreements") with Defendant on January 10, 2002, for the use of Defendant's Market Scan Trio II System, a combination of computer equipment, software, and support service. (Compl. ¶ 14.) The Agreements were to run for a period of 39 months, and were to be financed by Wells Fargo. (Compl. ¶ 16-17.)[1] According to the Agreements, Defendant Market Scan agreed to reimburse Plaintiffs for certain balloon payments (the "Balloon

---

[1] Pursuant to the Agreements, Market Scan agreed to provide certain rebates, including the absorption of approximately $249,410.58 of balloon payments scheduled to become due at the end of the leasing periods set forth in the Agreements.

Payments") if Plaintiffs renewed their respective leases at equal or greater value, for an additional 39-month period. (Compl. ¶ 18.) The aforementioned Agreements state:

> Thank you for selecting our Market Scan Trio II System. This will confirm that, upon expiration of the 39-month Lease Agreement with Wells Financial as Lessor, for your new Market Scan Trio II System, you will have the following options:
>
> 1.  Renew the Lease Agreement, at equal or greater value, for an additional 39-month term, at which time new hardware and software will be provided and Market Scan Information Systems, Inc. will reimburse you for the End of Lease Loyalty Option Payment.

(Compl. ¶ 18.)

In addition, the Agreements contain an arbitration provision. Paragraph 10 provides:

> Any controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration in Los Angeles County, California in accordance with the Rules of the American Arbitration Association, and judgment upon any award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(Def.'s Br. 2.)

Plaintiffs filed a complaint in this court against Defendant and Wells Fargo based on a dispute regarding the Balloon Payments. Wells Fargo brought a counterclaim against Plaintiffs and a cross-claim against Defendant. The agreements between Wells Fargo and Plaintiffs, as well as those between Wells Fargo and Defendant, do not contain any arbitration provisions.

## DISCUSSION

Defendant's primary assertion is that the Federal Arbitration Act requires this Court to stay the proceedings pending arbitration. According to 9 U.S.C. § 3:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall

3

> on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

First, this Court must determine whether the parties have made a valid agreement to arbitrate their disputes. As previously discussed, paragraph 10 of the Agreement contains an arbitration provision. That provision requires the parties to settle any controversy or claim relating to the Agreements via arbitration. (Def.'s Br. 2.) Agreements of this sort are "valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Plaintiffs argue that this arbitration provision is unconscionable. In order to judge Plaintiffs' unconscionability argument, this Court must determine what law to apply. Paragraph 10 of the Agreements, the same paragraph in which the arbitration provision appears, contains a choice of law provision, indicating that the Agreements are "to be governed and construed according to the laws of the State of California." (Affidavit of Steven Saigeon ("Saigeon Aff.") 8.) In order to determine the validity of the arbitration provision, this Court must first determine the validity of the choice of law provision.

**I.      Choice of Law**

Under the Erie doctrine, "federal courts sitting in diversity apply state substantive law and federal procedural law." Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 228 (3d Cir. 2005) (quoting Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427 (1996)). Therefore, this Court must apply New Jersey law in determining the validity of the choice of law provision

in the Agreements.

"Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." North Bergen Rex Trans., Inc. v. Trailer Leasing Co., 158 N.J. 561, 568 (1999) (quoting Instructional Sys., Inc. v. Computer Curriculum Corp., 130 N.J. 324, 341 (1992)); General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 331 n. 21 (3d Cir. 2001); Schunkewitz v. Prudential Securities Inc., 99 Fed. Appx. 353, 355 (3d Cir. 2004); Pepe v. Rival Co., 85 F. Supp. 2d 349, 382 (D.N.J. 1999) ("New Jersey courts tend to enforce [choice of law] provisions in contracts provided the public policies of New Jersey are not offended and the contract bears some relation to the chosen jurisdiction.") aff'd, 254 F.3d 1078 (3d Cir. 2001). "However, New Jersey law will govern if: '(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.'" North Bergen Rex Trans., Inc, 158 N.J. at 568.

Here, the first prong is satisfied because Market Scan's principal place of business is in California. Plaintiffs do not make any argument as to why this choice of law provision would violate any public policy established in the State of New Jersey, the only state with an arguably "materially greater interest." Indeed, "New Jersey's public policy . . . favors enforcement of valid agreements to arbitrate." Delta Funding Corp. v. Harris, 189 N.J. 28, 39 (2006).

In light of New Jersey's position on choice of law provisions, and the fact that the provision here does not violate New Jersey public policy, the choice of law provision in the Agreements at issue is valid. Thus, all substantive law issues should be governed under California law, pursuant to that provision.

## II. Unconscionability Under California Law

Next, this Court must determine the validity of the arbitration provision under California law. The test for unconscionability consists of two prongs: procedural unconscionability and substantive unconscionability. See Armendariz v. Found. Health Psychcare Services, 24 Cal. 4th 83, 114 (Cal. 2000). A party asserting unconscionability must show both procedural and substantive unconscionability in order to render a contract provision invalid. Discover Bank v. Superior Court, 36 Cal. 4th 148, 160 (Cal. 2005).

Procedural unconscionability focuses on "an inequality of bargaining power, which results in no real negotiation and an absence of meaningful choice." Crippen v. Central Valley RV Outlet, Inc., 124 Cal. App. 4th 1159, 22 Cal. Rptr. 3d 189, 193 (Cal. Ct. App. 2004); see Discover Bank, 36 Cal. 4th at 160 ("The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'") (quoting Little v. Auto Stiegler, Inc., 29 Cal. 4th 1064, 1071 (2003)). The procedural element takes superior bargaining position into account. Id. at 193. Plaintiffs' assertion of procedural unconscionability revolves around the fact that the provision was "hidden" in the Agreements by appearing on the back of the page, in the last paragraph, and

under the heading "MISCELLANEOUS." Plaintiffs argue that they should not have been expected to notice the provision. Plaintiffs argue further that even if they had noticed the provision, they still should not have been expected to understand it because they are legally unsophisticated. Plaintiffs' arguments are unpersuasive.

First, the clause is not "hidden." The clause is not buried in the middle of a document with multiple pages. It is on the back side of a one-page, two-sided agreement. A simple reading of both sides of the document, an endeavor that likely would have taken less than five minutes, would reveal the clause. Further, Plaintiffs are members of a chain of ten multimillion dollar automobile dealerships known as the World Auto Group. The signatory of all of the Agreements is the "president or operating manager of the . . . dealerships named in this action." (Affidavit of Chris Preziosi 1.) As such, Plaintiffs enter into and discuss commercial contracts frequently. Therefore, Plaintiffs cannot argue reasonably that they are unsophisticated regarding contracts such as the Agreements at issue in this case. The fact that the signatory of the Agreements, the president or operating manager of these dealerships, is experienced in business further supports the notion that Plaintiffs cannot claim ignorance of this clause merely because of its placement in the document.

Despite the fact that Plaintiffs' unconscionability argument would fail for lack of procedural unconscionability alone, this Court notes that Plaintiffs' arguments would also fail for lack of substantive unconscionability. Substantive unconscionability occurs when the agreement has one-sided or unfair results. Armendariz, 24 Cal. 4th at 114; Discover Bank, 36 Cal. 4th at 160 ("Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.") Here, the arbitration provision is not significantly one-sided or unfair in

favor of either party because both parties are equally bound by arbitration.  See Flores v. Transamerica HomeFirst, Inc., 93 Cal. App. 4th 846, 113 Cal. Rptr. 2d 376, 382 (Cal. Ct. App. 2001).

In order to succeed with their unconscionability claim, Plaintiffs would have to prove that the arbitration provision in the Agreements is both procedurally and substantively unconscionable. Plaintiffs have failed to do so.

### III.    California Code of Civil Procedure

Plaintiffs argue that, even in the absence of unconscionability, the arbitration provision still should not be enforced, due to § 1281.2 of the California Civil Procedure Code, which authorizes California state courts to stay arbitration (rather than staying litigation) if pending litigation involves parties who are not bound by an arbitration agreement.[2]  CAL. CIV. PROC. CODE § 1281.2.  Plaintiffs cite Volt Info. Sciences, Inc. v. Bd. of Trustees of the Leland Stanford Junior University, 489 U.S. 468 (1989), a case brought in California state court, in support of this

---

[2] In relevant part, CAL. CIV. PROC. CODE § 1281.2(c) states that a court need not issue an order compelling arbitration when:

> A party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact[.]

Once a court identifies such a situation, that court may:

> (1) refuse to enforce the arbitration agreement and may order intervention or joinder of all parties in a single action or special proceeding; (2) may order intervention or joinder as to all or only certain issues; (3) may order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action or special proceeding.

argument. Plaintiffs misconstrue Volt and its progeny.

In Volt, the defendant, Stanford University, brought an action against the plaintiff, a contractor, for fraud and breach of contract, and sought indemnity from two companies involved in the design and management of the project. The plaintiff filed a petition to compel arbitration and to stay prosecution of the lawsuit. The Superior Court of Santa Clara County instead granted Stanford's motion to stay the arbitration pending litigation of the claims against the third parties not bound by the arbitration agreement, pursuant to CAL. CIV. PROC. CODE § 1281.2(c). The California Court of Appeal affirmed. The Supreme Court of California declined to review the case, but the Supreme Court of the United States granted certiorari. Volt, 489 U.S. at 470-71.

In upholding the lower court's decision, the Supreme Court addressed several arguments. First, it held that Section Four of the Federal Arbitration Act does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." Id. at 474.

Second, the plaintiff argued that the California Court of Appeal's interpretation of the choice of law clause violated "the settled federal rule that questions of arbitrability in contracts subject to the FAA must be resolved with a healthy regard for federal policy favoring arbitration." Id. at 475 (citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983)). The Supreme Court declined this argument, holding that the Court of Appeal did not offend Moses H. Cone because "there is no federal policy favoring arbitration under a certain set of procedural rules." Id. "Interpreting a [choice of law] clause to make applicable state rules governing the conduct of arbitration – rules which are manifestly designed to encourage resort to

the arbitral process – simply does not offend the rule of liberal construction set forth in Moses H. Cone[.]"  Id.

Finally, the plaintiff argued that application of § 1281.2(c) is pre-empted by the FAA.  The Supreme Court held that because such an application does not undermine the goals and policies of the FAA, there is no pre-emption.  Id. at 477-78.

Plaintiffs argue here that, as in Volt, because the choice of law provision selects California law, § 1281.2(c) applies.  Therefore, Plaintiffs argue, the motion to stay pending arbitration should be denied, because Wells Fargo, a party to this litigation, is not bound by the arbitration agreement.  Plaintiffs' argument fails, however, because this Court's decision as to whether the choice of law clause includes California arbitration law is not bound by Volt.

As the Supreme Court stated in Volt, "there is no federal policy favoring arbitration under a certain set of procedural rules."  Volt, 489 U.S. at 475.  But, the crux of the decision in Volt to not alter the determination of the California appellate court stems from the Supreme Court's implicit recognition that interpreting a choice of law provision is informed by the law of the forum state.  In Volt, that was the law of California.  Id. at 474 ("The interpretation of private contracts is ordinarily a question of state law, which this Court does not sit to review.").  Further, six years after Volt, the Supreme Court of the United States addressed whether a generic choice of law provision, standing alone, evidences an intent to replace a default rule of the FAA with a law from the chosen forum state.  Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59 (1995).  As a general matter, it does not.

In Mastrobuono, the Supreme Court considered whether a generic choice of law provision,

which chose the laws of New York to govern the contract, "evidence[d] an intent to opt out of the federal default rule that arbitrators may award punitive damages and replace it with one borrowed from New York law that they may not award them." Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287, 295 (3d Cir. 2001) (explaining the analysis in Mastrobuono). The Court examined the choice of law clause "in isolation," noting that the clause could "reasonably be read as merely a substitute for the conflict of laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship," i.e., whether to apply the laws of New York or those of another state. Mastrobuono, 514 U.S. at 59.

Under this reading, the Supreme Court held "there would be nothing in the contract that could possibly constitute evidence of an intent to exclude punitive damages claims." Id. Even if the choice of law clause was intended to be "more than a substitute for ordinary conflict of laws analysis," preclusion of the award of punitive damages may not apply, because New York allows courts, but not arbitrators, to award punitive damages. Id. The Court reasoned that "the provision might include only New York's substantive rights and obligations and, not the State's allocation of power between the tribunals." Id. Although the Court did not set forth which interpretation of the [choice of law] was the best one, the Court squarely held that "in the absence of contractual intent to the contrary," FAA standards control. Id.

Further, the Third Circuit, citing Mastrobuono, has held that "a generic [choice of law clause], standing alone, raises no inference that contracting parties intended to opt out of the FAA's default regime." Roadway Package, 257 F.3d at 295.

This Court finds that the analysis in Roadway Package applies here, as well. The Third

11

Circuit stated that it did "not view Volt as offering guidance as to how generic [choice of law] clauses should be interpreted; rather, the [Supreme] Court merely followed its obligation to defer to state court constructions of private agreements in cases where no federal rights are at stake." Roadway Package, 257 F.3d at 295. "This supposition is supported by Mastrobuono, where the Court was reviewing a federal court's construction of a [choice of law] clause." Id.

Here, the choice of law provision states that "[t]his [a]greement is to be governed and construed according to the laws of the State of California, without regard to its internal principles with respect to choice of law." This choice of law provision, nor any of the other provisions of the contract, does not indicate to this Court that the parties intended to opt out of the FAA's procedures regarding staying litigation pending arbitration. The choice of law provision is "merely a substitute for the conflict of laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship." Mastrobuono, 514 U.S. at 59.

### IV.   Motion for Stay Pending Arbitration

Having determined the validity of the arbitration provision of the Agreements, this Court must determine whether Defendant's motion for a stay of the proceedings pending arbitration should be granted. As previously mentioned, the FAA requires such action. Plaintiffs argue that the granting of a stay may result in piecemeal litigation and inconsistent results because the agreements between Wells Fargo and Plaintiffs, as well as those between Wells Fargo and Defendant, are not subject to any arbitration provision. But, both the Supreme Court of the United States and the Third Circuit Court of Appeals have recognized that "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the

12

underlying dispute but not to the arbitration agreement." In re Prudential Ins. Co. of Am. Sales Practice Litig., 133 F.3d 225, 233 (3d Cir. 1998) (quoting Moses H. Cone, 460 U.S. at 20 (1983)).

Furthermore, the Supreme Court of the United States has recognized that staying litigation among parties not subject to arbitration provisions, as well as those that are subject to arbitration provisions, in piece-meal litigation, may be an advised course of action. Moses H. Cone, 460 U.S. at 21. When litigation involves a dispute that warrants a stay due to an arbitration provision, the decision to stay non-arbitrating parties, as well as arbitrating parties "is one left to the district court . . . as a matter of its discretion to control its docket." Id.

Here, Wells Fargo is the only non-arbitrating party involved in the litigation, and the issues involving them are the same as the underlying issues between Plaintiffs and Defendant. Therefore, this Court concludes that, in the interest of judicial economy and efficiency, a stay pending arbitration is prudent as to claims involving Wells Fargo, in addition to claims involving the other parties to the litigation.[3]

---

[3] This litigation is stayed as to all parties pending the outcome of the arbitration between Defendant and Plaintiffs. This motion does not seek, nor would precedent allow, this Court to require Wells Fargo to participate in the arbitration. Bel-Ray Co., Inc. v. Chemrite, Ltd., 181 F.3d 435, 444 (3d Cir. 1999) ("Arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so.").

## **CONCLUSION**

     For the reasons set forth in this opinion, this Court concludes that the arbitration provision in the Agreements between Plaintiffs and Defendant Market Scan is valid and controlling, and that Defendant Market Scan's request for a stay of the litigation pending arbitration should be granted. The entire litigation should be stayed, including claims involving the non-arbitrating party, Wells Fargo.

                                           S/Joseph A. Greenaway, Jr.
                                           JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: June 5, 2007